CAMILIA MICHELLE HAMILTON, TIMOTHY WAYNE HAYES, CLAUDE RICHARD HUGGINS, AND OTHERS SIMILARLY SITUATED, PLAINTIFFS v. FRANKLIN FREEMAN, AND HAZEL KEITH, DEFENDANTS

No. COA00-1470

(Filed 20 November 2001)

## 1. Parties— intervention—timeliness—legal commonality

The trial court did not abuse its discretion by granting an inmate's motion to intervene under N.C.G.S. § 1A-1, Rule 24 in plaintiff inmates' class action complaint seeking declaratory and injunctive relief from acts committed by officials at the North Carolina Department of Correction (DOC) including unilaterally modifying judgments to conform to state statutes even if it was in violation of an inmate's plea agreement, because: (1) the inmate made his motion prior to any hearing on the merits of this action

and prior to the entry of final judgment; (2) defendants have not shown any unfairness or prejudice resulting from the trial court's granting of the motion; (3) this inmate, like the other plaintiffs, is in the custody of DOC and his sentence was subsequently modified by DOC; (4) the reason for delay in the motion to intervene was reasonable and legitimate since the inmate would not have needed to intervene had the trial court granted plaintiffs' motion for class certification; and (5) the inmate's claim contained sufficient legal commonality with the claims presented by plaintiffs to permit his intervention.

## 2. Declaratory Judgments— standing—actual controversy

The trial court did not err by concluding that it had jurisdiction in plaintiff inmates' action seeking declaratory and injunctive relief from acts committed by officials at the North Carolina Department of Correction (DOC) including unilaterally modifying judgments to conform to state statutes even if it was in violation of an inmate's plea agreement, because: (1) an actual controversy existed between plaintiffs and defendants at the time the complaint was filed since plaintiffs were in DOC custody serving sentences never ordered by any trial court; (2) although plaintiffs received some relief after instituting the present action, they did not receive specific performance of their original plea agreements; and (3) the trial court's conclusion that plaintiffs were not entitled to specific performance of their original plea bargains does not render the former proceedings moot.

## 3. Declaratory Judgments— injunctive relief—motion to dismiss

The trial court did not err by denying defendants' motion to dismiss plaintiff inmates' complaint seeking declaratory and injunctive relief from acts committed by officials at the North Carolina Department of Correction (DOC) including unilaterally modifying judgments to conform to state statutes even if it was in violation of an inmate's plea agreement, because: (1) plaintiffs' claims were not moot; and (2) an inmate's motion to intervene was timely.

## 4. Sentencing— legal effect—contravention of statutory law

The trial court did not err by ordering the North Carolina Department of Correction (DOC) to give legal effect to judgments by the trial courts that contravene statutory law, because: (1) the sentencing courts had authority over the dispute and control over

the parties, thus requiring the resulting judgments to be honored as received by DOC; (2) DOC usurped the power of the judiciary and violated separation of powers by independently amending judgments to reflect compliance with DOC's interpretation of statutory authority; and (3) the trial court's order merely requires DOC to record the sentence in its official agency records as the sentence appears on the face of the judgment instead of granting specific performance to illegal plea bargains.

## 5. Constitutional Law; Sentencing— due process rights—unilateral modification of judgments

The trial court did not err by concluding that the North Carolina Department of Correction's (DOC) policy of unilaterally modifying judgments did not violate plaintiff inmates' due process rights, because: (1) the State did not have the authority to offer benefits to plaintiffs in violation of state law, and plaintiffs were never entitled to such benefits; and (2) even though plaintiffs are entitled to return to court in order to regain the position they held before the sentencing courts' errors, plaintiffs may not seek to enforce a plea bargain that violates North Carolina General Statutes nor do they have a protected interest in such an agreement.

## 6. Sentencing— unilateral modification—prospective or retrospective relief

Although plaintiff inmates contend the trial court erred by providing prospective rather than retrospective relief to plaintiff inmates seeking declaratory and injunctive relief from acts committed by officials at the North Carolina Department of Correction (DOC) including unilaterally modifying judgments to conform to state statutes even if it was in violation of an inmate's plea agreement, the trial court's order directs DOC to provide appropriate relief to all affected inmates, present and future.

Appeal by defendants from order entered 11 July 2000 by Judge Howard E. Manning, Jr., in Wake County Superior Court. Appeal by plaintiffs, intervenor, and proposed intervenors from order entered 5 May 2000 by Judge W. Osmond Smith, III, and order entered 11 July 2000 by Judge Howard E. Manning, Jr., in Wake County Superior Court. Heard in the Court of Appeals 27 August 2001.

*North Carolina Prisoner Legal Services, Inc., by Winifred H. Dillon, for plaintiff, intervenor, and proposed intervenor appellants-appellees.*

*Attorney General Roy Cooper, by Assistant Attorney General Elizabeth F. Parsons, for defendant appellants-appellees.*

TIMMONS-GOODSON, Judge.

On 14 June 1996, Camilia Michelle Hamilton, Timothy Wayne Hayes, and Claude Richard Huggins (collectively "plaintiffs") filed a class action complaint in Wake County Superior Court seeking declaratory and injunctive relief from certain acts committed by officials at the North Carolina Department of Correction ("DOC"). At the time the complaint was filed, plaintiffs were inmates incarcerated at various facilities administered by DOC. The complaint named as defendants in their official capacities Franklin Freeman, the North Carolina Secretary of the DOC, and Hazel Keith, DOC's Manager of Combined Records ("defendants").

The pertinent factual and procedural events of this appeal are as follows: On 4 May 1993, Camilia Hamilton ("Hamilton") entered into a plea bargain with the State, in which she agreed to plead guilty to armed robbery in exchange for the State's recommendation that she receive a fourteen-year sentence as a Committed Youthful Offender ("CYO"). At the time, CYOs were eligible for parole consideration immediately upon entering DOC's custody. *See* N.C. Gen. Stat. § 148-49.15(a) (1983). The trial court approved the plea bargain and sentenced Hamilton accordingly. When Hamilton entered DOC's custody, however, DOC determined that Hamilton did not qualify for CYO status under North Carolina General Statutes and refused to consider her for immediate parole.

DOC also allegedly modified the sentences of Timothy Hayes ("Hayes") and Claude Huggins ("Huggins"). Both Hayes and Huggins entered into plea agreements with the State, whereby the trial court sentenced Hayes and Huggins to concurrent terms of imprisonment. Hayes and Huggins were statutorily ineligible for concurrent sentences, however, and upon entering DOC's custody, DOC informed them that their sentences would run consecutively rather than concurrently.

Plaintiffs filed suit against DOC, requesting class action status for their claims in order to include all North Carolina inmates whose sen-

tences had been modified by DOC. In their complaint, plaintiffs alleged defendants violated plaintiffs' constitutional rights by denying inmates the benefit of their plea agreements as reflected in the sentencing courts' judgments. Specifically, plaintiffs objected to DOC's policy of unilaterally modifying judgments in order to reflect compliance with statutory law, a practice resulting in lengthier sentences for plaintiffs. Plaintiffs argued DOC's actions in failing to accurately honor and record the sentences issued by the trial courts amounted to impermissible re-sentencing of plaintiffs in violation of due process rights and separation of powers.

Several years passed as plaintiffs and defendants attempted to resolve their dispute through mediation. In the meanwhile, DOC issued a directive on 12 April 2000 to its Information Resources, Management Information, and Combined Records sections, instructing them to identify and provide notice to those inmates sentenced to concurrent terms for offenses which by statute require consecutive terms. The resulting notice to the affected inmates stated in part that, "DOC records have been made to show that [the inmate's] sentence is to be served consecutive to (at the end of) any other existing sentence(s) even though the plea agreement or the judgment and commitment may show that the sentence is to run concurrent." The notice further advised inmates that they were potentially "entitled to go back into court and receive some relief" and urged inmates to seek counsel for appropriate action.

On 5 May 2000, the trial court denied plaintiffs' motions to intervene, to amend the complaint, and for class certification. Plaintiffs thereafter filed a motion for summary judgment, and defendants filed a motion to dismiss. Jerry Lee Ward ("Ward"), another inmate in the custody of DOC, also filed a motion to intervene as a party plaintiff. Like Hayes and Huggins, the trial court had sentenced Ward to concurrent terms of imprisonment, a judgment subsequently altered by DOC to reflect consecutive sentences. Accordingly, Ward sought permissive intervention in the action, as well as intervention as of right.

The three motions were heard 11 July 2000 by the trial court, which denied defendants' motion to dismiss and granted Ward's motion to intervene. The trial court also denied plaintiffs' claims for relief, except the request for a declaration regarding the propriety of DOC's practices, which the trial court granted. Accordingly, the court declared "that the Department of Correction has no authority to

record a defendant-inmate's clearly erroneous sentence in a manner which makes the sentence conform to state statute." The trial court therefore ordered that the

> Department of Correction, when it receives a judgment and commitment form from a superior court which specifically orders a concurrent sentence for a criminal offense for which state law requires a consecutive sentence, will record the sentence in its official agency records as the sentence appears on the face of judgment. Thereafter, in a reasonable time the Department of Correction will notify in writing the sentencing judge, the district attorney, the inmate on whom the sentence was imposed, and the inmate's trial counsel, if any, that because the sentence and judgment do not accord with state law, the judgment must be vacated. The notice provided by the Department of Correction will be specific to the judgment in question and must inform those notified that, pursuant to *State v. Wall*, 348 N.C. 671, 502 S.E.2d 585 (1998), the sentence violates state law and the affected inmate is entitled to return to court for purposes of withdrawing the plea entered and either standing trial on the charge(s) or trying to negotiate a new plea which does not violate state law.

Defendants now appeal from the 11 July 2000 order, and plaintiffs, intervenor, and proposed intervenors appeal from both the 11 July 2000 order and the 5 May 2000 order.

---

Defendants present the following issues for review: whether the trial court erred in (1) granting Ward's motion to intervene; (2) asserting jurisdiction; (3) denying defendants' motion to dismiss; (4) granting declaratory relief to plaintiffs; and (5) ordering defendants to give plaintiffs specific performance of plea bargains. Plaintiffs, intervenor, and proposed intervenors argue the trial court erred in (1) denying plaintiffs' motion for class certification; (2) denying the proposed intervenors' motion to intervene; (3) failing to find due process violations; and (4) failing to grant appropriate relief. We address the above-stated issues in turn.

### I. Defendants' Appeal

[1] Defendants argue the trial court erred in granting Ward's motion to intervene. Defendants contend that Ward's motion was untimely, and that he lacked sufficient interest in the case for intervention as a matter of right, as well as sufficient commonality with the other plaintiffs for permissive intervention. We disagree.

**HAMILTON v. FREEMAN**

[147 N.C. App. 195 (2001)]

North Carolina General Statutes section 1A-1, Rule 24, governs intervention by parties in an action. It states, in pertinent part, as follows:

(a) *Intervention of right.*—Upon timely application anyone shall be permitted to intervene in an action:

(1) When a statute confers an unconditional right to intervene; or

(2) When the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(b) *Permissive intervention.*—Upon timely application anyone may be permitted to intervene in an action.

(1) When a statute confers a conditional right to intervene; or

(2) When an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

N.C. Gen. Stat. § 1A-1, Rule 24 (a)-(b) (1999). In considering whether a motion to intervene is timely, the trial court considers "(1) the status of the case, (2) the possibility of unfairness or prejudice to the existing parties, (3) the reason for the delay in moving for intervention, (4) the resulting prejudice to the applicant if the motion is denied, and (5) any unusual circumstances." *Proctor v. City of Raleigh Bd. of Adjust.*, 133 N.C. App. 181, 183, 514 S.E.2d 745, 746 (1999). Whether a motion to intervene is timely is a matter within the sound discretion of the trial court and will be overturned only upon a showing of abuse of discretion. *See State Employees' Credit Union, Inc. v. Gentry*, 75 N.C. App. 260, 264, 330 S.E.2d 645, 648 (1985). A motion to intervene is rarely denied as untimely prior to the entry of judgment, and may be considered timely even after judgment is rendered if "extraordinary and unusual circumstances" exist. *Id.; see also Proctor*, 133 N.C. App. at 184, 514 S.E.2d at 747 (concluding that proposed intervenors' motion was timely after entry of judgment).

In the instant case, the trial court did not abuse its discretion in determining that Ward's motion to intervene was timely. Ward made his motion prior to any hearing on the merits of this action, and prior to the entry of final judgment. Defendants have not shown any unfairness or prejudice resulting from the trial court's order granting Ward's motion. Like the other plaintiffs, Ward is an inmate in the custody of DOC whose sentence, as entered by the trial court, was subsequently modified by DOC. Moreover, Ward filed his motion to intervene on 22 June 2000, less than two months after the trial court denied plaintiffs' motion for class certification. Had the trial court granted plaintiffs' motion for class certification, Ward need not have intervened in the action to protect his interests. Thus, the reason for delay in the motion to intervene was reasonable and legitimate, evidencing no neglect on Ward's part.

We also conclude the trial court properly allowed Ward to intervene in the action. Although it is unclear whether the trial court granted Ward's motion to intervene as a matter of right or by permission, we note that the trial court's discretion in regard to permissive intervention is not reviewable by this Court absent a showing of abuse. See N.C. Gen. Stat. § 1A-1, Rule 24(b)(2); Ellis v. Ellis, 38 N.C. App. 81, 84, 247 S.E.2d 274, 277 (1978). As an inmate whose sentence was unilaterally modified by DOC, Ward's claim against DOC contained sufficient legal commonality with the claims presented by plaintiffs to permit his intervention. Thus, the trial court did not abuse its discretion in granting Ward's motion to intervene, and we therefore overrule defendants' first assignment of error.

[2] In their second assignment of error, defendants argue the trial court lacked jurisdiction over the instant case. Defendants claim that plaintiffs did not possess proper standing to pursue their claims, and further, that plaintiffs presented no active claim and controversy to the court. We cannot agree.

When standing is challenged, the trial court must determine whether an actual controversy existed at the time the pleading requesting declaratory relief was filed. See Simeon v. Hardin, 339 N.C. 358, 369, 451 S.E.2d 858, 866 (1994); Sharpe v. Park Newspapers of Lumberton, 317 N.C. 579, 584, 347 S.E.2d 25, 29 (1986). Once jurisdiction attaches, it is generally "not . . . ousted by subsequent events." In re Peoples, 296 N.C. 109, 146, 250 S.E.2d 890, 911 (1978) (holding that judge's retirement neither divested the Judicial Standards Commission of jurisdiction nor rendered the question of his removal moot), cert. denied, 442 U.S. 929, 61 L. Ed. 2d 297 (1979).

HAMILTON v. FREEMAN

[147 N.C. App. 195 (2001)]

At the time plaintiffs filed their complaint in this case, they were in DOC custody serving sentences never ordered by any trial court. In their complaint, plaintiffs alleged they had suffered and continued to suffer harm of a constitutional dimension due to DOC's practices. Accordingly, plaintiffs alleged injuries suffered as a result of DOC's policy of unilaterally modifying the sentences of the trial courts and, therefore, an actual controversy existed between plaintiffs and defendants at the time they filed their complaint. Consequently, because plaintiffs possessed standing when the complaint was filed, and because their standing was unaffected by subsequent events, the trial court correctly concluded that plaintiffs had standing to pursue their claims. *See Simeon*, 339 N.C. at 369, 451 S.E.2d at 866 (concluding that plaintiffs had standing to challenge district attorney's calendaring authority, even though their criminal cases were no longer pending at the time their claims were heard).

Defendants also contend that, because the original three plaintiffs, Hamilton, Hayes and Huggins, had been granted some form of relief at the time the trial court entered judgment, their claims against DOC were moot, effectively nullifying the action. Defendants also argue that the mootness doctrine precludes this Court's review of the merits of plaintiffs' case.

As stated herein, the trial court properly granted Ward's motion to intervene. Thus, Ward was a legitimate party to the action presenting an active claim and controversy to the court. Furthermore, we disagree with defendants' assertion and plaintiffs' concession that, because Hamilton, Hayes, and Huggins were granted certain relief prior to the trial court's review of the instant case, their claims against DOC were moot. Plaintiffs' complaint alleged that defendants' practice of unilaterally modifying judgments violated plaintiffs' due process rights. Plaintiffs therefore demanded that they receive the benefit of their original plea bargains with the State. Although Hamilton, Hayes and Huggins received some relief after instituting the present action, they did not receive specific performance of their original plea agreements, which was the relief sought in their complaint. Thus, Hamilton, Hayes and Huggins presented an active claim and controversy to the trial court; namely, whether they, along with the other plaintiffs, were entitled to specific performance of their original plea bargains. The trial court's conclusion, which we now review, that plaintiffs were not entitled to specific performance of their original plea bargains, does not render the former proceedings moot. We therefore overrule defendants' second assignment of error.

**[3]** By their third assignment of error, defendants contend the trial court erred in denying defendants' motion to dismiss. Defendants argue that, because plaintiffs' claims were moot and Ward's motion to intervene was untimely, defendants were entitled to dismissal of plaintiffs' case. Given our resolution of the foregoing issues, we overrule defendants' third assignment of error.

**[4]** Defendants next argue the trial court erred in ordering DOC to give legal effect to judgments by the trial courts that contravene statutory law. Defendants contend that such orders are illegal, and that DOC is therefore not obligated to honor them. We disagree.

"The superior court has exclusive, original jurisdiction over all criminal actions not assigned to the district court division . . . ." N.C. Gen. Stat. § 7A-271(a) (1999). It is well established that a judgment of a Superior Court must be honored unless the judgment is void. *See Worthington v. Wooten*, 242 N.C. 88, 92, 86 S.E.2d 767, 770 (1955). Where a court has authority to hear and determine the questions in dispute and has control over the parties to the controversy, a judgment issued by the court is not void, even if contrary to law. *See Allred v. Tucci*, 85 N.C. App. 138, 142, 354 S.E.2d 291, 294, *disc. review denied*, 320 N.C. 166, 358 S.E.2d 47 (1987). Such a judgment is voidable, but not void *ab initio*, and is binding until vacated or corrected. *See id.* Defendants do not argue that the trial courts that originally sentenced plaintiffs lacked jurisdiction. Because the sentencing courts had authority over the disputes and control over the parties, the resulting judgments were not void and must be honored as received by DOC.

Furthermore, we note that "[t]he legislative, executive, and supreme judicial powers of the State government [are] . . . separate and distinct from each other." N.C. Const. art. I, § 6. The Department of Correction is a part of the executive branch of North Carolina. *See* N.C. Gen. Stat. § 143B-260 (1999). By independently amending judgments to reflect compliance with DOC's interpretation of statutory authority, DOC has usurped the power of the judiciary, thereby violating separation of powers. *See Thomas v. N.C. Dept. of Human Resources*, 124 N.C. App. 698, 706-10, 478 S.E.2d 816, 821-23 (1996) (holding that the North Carolina Department of Human Resources violated separation of powers by engaging in statutory interpretation and ignoring appellate court judgments), *affirmed per curiam*, 346 N.C. 268, 485 S.E.2d 295 (1997).

Finally, we disagree with defendants' contention that the trial court's order directly contradicts our Supreme Court's decision in *State v. Wall*, 348 N.C. 671, 502 S.E.2d 585 (1998). While we agree that *Wall* is instructive, it is not dispositive of the issues raised in the present case.

In *Wall*, the defendant entered into a plea bargain with the State, whereby the State agreed to consolidate the defendant's two cases and recommend a twenty-five-year sentence. The trial court approved the defendant's plea agreement and sentenced the defendant accordingly. Although the defendant, defense counsel, and the assistant district attorney agreed that the defendant's sentence would be served concurrently, the plea agreement did not specify concurrent or consecutive terms, nor did the resulting judgment provide for a concurrent or consecutive sentence. DOC thereafter recorded the defendant's sentence as providing consecutive terms of imprisonment. Upon inquiry by the defendant, DOC informed him that, under North Carolina General Statutes, he was obligated to serve consecutive terms. The defendant filed a motion for appropriate relief with the trial court, which found that, based on his plea bargain with the State, the defendant was entitled to serve concurrent rather than consecutive sentences. Our Supreme Court subsequently granted DOC's petition for writ of certiorari in order to review the trial court's action.

Upon reviewing the relevant criminal statutes governing the defendant's case, the Court concluded that the defendant was statutorily obligated to serve consecutive sentences, and that the trial court did not have authority to order otherwise. The Court therefore vacated the trial court's order. The Court continued, however:

> In the instant case, defendant's plea of guilty was consideration given for the prosecutor's promise. He was entitled to receive the benefit of his bargain. However, defendant is not entitled to specific performance in this case because such action would violate the laws of this state. Nevertheless, defendant may avail himself of other remedies. He may withdraw his guilty plea and proceed to trial on the criminal charges. He may also withdraw his plea and attempt to negotiate another plea agreement that does not violate [the relevant statute].

*Wall*, 348 N.C. at 676, 502 S.E.2d at 588.

In the instant case, defendants argue the trial court's order impermissibly provides for specific performance of illegal plea bargains in contravention of *Wall*. We disagree with defendants' application of *Wall* to the issues raised in the present appeal. The facts of *Wall* differ from the facts presented by the instant case in several key respects. In contrast to the instant case, neither the plea agreement nor the judgment in *Wall* specified that the defendant's sentence should run concurrently. Thus, in *Wall*, it appears that DOC did not intentionally disregard any plea agreements, but rather, in the face of a silent judgment, entered the defendant's sentence according to statutory dictates. The *Wall* Court did not have to decide, nor did it address, the central question posed to the trial court in the instant appeal, namely, whether DOC may deliberately modify judgments that appear to violate North Carolina General Statutes.

We further disagree with defendants' interpretation of the term "specific performance." The *Wall* Court concluded that the defendant was not entitled to specific performance of his original plea bargain because the agreement violated North Carolina statutes. In other words, the defendant was not entitled to serve concurrent terms as envisioned by the plea bargain, but was allowed to return to court in order to obtain appropriate relief. Defendants now argue the trial court's order directing DOC to accurately record sentences as they appear on the face of the judgments amounts to an order directing DOC to grant specific performance to inmates' plea bargains. We disagree with defendants' interpretation of the trial court's order. The order merely requires DOC to "record the sentence in its official agency records as the sentence appears on the face of the judgment," a judgment which the sentencing court *"must* [thereafter] *vacate*[]" (emphasis added). The order never grants specific performance to illegal plea bargains; indeed, it specifically states that judgments giving effect to such must be vacated. We conclude the trial court's order complies with the dictates of *Wall*. Accordingly, we hold the trial court did not err in ordering DOC to record sentences as they appear on the face of the judgments, and we therefore overrule defendants' remaining assignments of error.

## II. Plaintiffs' Appeal

[5] Plaintiffs argue the trial court erred in concluding that defendants' policy of unilaterally modifying judgments did not violate plaintiffs' due process rights. Defendants contend that plaintiffs cannot maintain a protected liberty interest in a judicial mistake. On this point, we agree with defendants. Although it is true that a state's uni-

lateral breach of a plea agreement may constitute a violation of due process rights, *see, e.g., Santobello v. New York*, 404 U.S. 257, 262, 30 L. Ed. 2d 427, 433 (1971), the plea agreements and judgments enforcing such agreements at issue in the instant case violate North Carolina statutes and must be vacated. *See Wall*, 348 N.C. at 676, 502 S.E.2d at 588. The State did not have the authority to offer benefits to plaintiffs in violation of state law, and plaintiffs were never entitled to such benefits. Plaintiffs are entitled to return to court, in order to regain the position they held before the sentencing courts' errors. *See id.* Plaintiffs may not, however, seek to enforce a plea bargain that violates North Carolina General Statutes, nor do they have a protected liberty interest in such an agreement. The trial court did not err, therefore, in failing to find that defendants' actions violated plaintiffs' due process rights.

[6] Plaintiffs further argue the trial court erred in providing prospective rather than retrospective relief to plaintiffs. Plaintiffs contend that, because several of the verbs utilized in the decretal portion of the order take the simple form of the future tense, such language directs only future compliance by DOC and does not encompass present plaintiffs. We disagree with plaintiffs' interpretation of the order.

The trial court's order declares that "the Department of Correction has no authority to record a defendant-inmate's clearly erroneous sentence in a manner which makes the sentence conform to state statute" and that "[a] defendant-inmate's sentence must be recorded in his combined record as specifically stated in the judgment and commitment." Although the trial court's order states that the DOC "*will* record" sentences and "*will* notify" affected inmates, we hold that the order, when read in conjunction with the above-stated declarations, directs DOC to provide appropriate relief to *all* affected inmates, present and future.

Based on our resolution of the foregoing issues, we need not determine whether the trial court erred in denying plaintiffs' motion for class action certification and proposed intervenors' motion for intervention. We therefore affirm the 11 July 2000 order of the trial court.

Affirmed.

Chief Judge EAGLES and Judge THOMAS concur.